# Loan Schedule No. 04
## [Amended and Restated Loan]

THIS SCHEDULE (this "Schedule"), intended to be effective as of March 8, 2002, is entered into by and between the parties shown below, and is intended to modify certain terms and conditions of Loan Schedule No. 01 referred to below. The terms of Loan Schedule No. 01 and the Master Loan and Security Agreement described below are incorporated herein and made a part hereof by reference. In connection with this Amendment, the parties hereto agree as follows:

**DESCRIPTION OF LOAN AGREEMENT:** Master Loan and Security Agreement No. 21904 dated April 15, 1999. (This Master Loan Agreement is referred to herein as the "Agreement".)

**DESCRIPTION OF LOAN SCHEDULE:** Loan Schedule No. 01 dated April 15, 1999 (Loan Schedule No. 01 is referred to below as the "Loan Schedule".)

**PARTIES TO THE AGREEMENT AND THE LOAN SCHEDULE:**

**Secured Party:** Center Capital Corporation ("CCC")

**Borrower:** A&W Artesian Well Company ("Debtor")

Notwithstanding any of the terms of the Agreement or Loan Schedule to the contrary, CCC and Debtor hereby agree to modify the Loan Schedule as follows:

The Loan Schedule was entered into in connection with Lender's financing of the Equipment referred to below (the "Equipment"). In connection with the execution of this Schedule 04, it is the intention of Lender and Borrower that an additional advance under the Loan Schedule be made, collateralized by the Equipment, and that the remainder of the Schedule 01 indebtedness as it currently exists be rewritten as described herein. The dollar amount shown below as the principal repayment amount is a combined repayment amount (exclusive of interest to accrue from time to time) for Loan Schedule 01 and the additional advance being made contemporaneously herewith. From and after the effective date, Schedule 01 shall be deemed to be amended hereby as to amounts due, but in all other respects shall remain in full force and effect. Additionally, Loan Schedule No. 01 shall be referred to as Loan Schedule 04. The language contained in the Loan Schedule is hereby deleted in its entirety and the following substituted in place thereof:

This Loan Schedule No. 04 is issued pursuant to the Agreement. (Terms used herein as proper terms, i.e. with an initial capital letter, yet which are not defined herein, shall have the meanings ascribed to such terms in the Agreement.)

To secure payment and performance of all Obligations and indebtedness of Borrower to Lender contained herein and in the Agreement, Borrower hereby restates and acknowledges its previous grant to Lender of a security interest in the goods, personal property and/or fixtures (the "Equipment") set forth below, together with all accessories, attachments, and accessions now or hereafter affixed thereto, and all substitutions, proceeds, insurance proceeds, and replacements thereof, plus any and all chattel paper, accounts, contract rights, payment intangibles and general intangibles arising from the sale, Loan, or other disposition thereof. Effective upon Borrower's execution of this Schedule, Borrower authorizes Lender to file, on one or more occasions, a UCC financing statement(s) relating to equipment or goods for which Lender has been asked to consider providing financing on behalf of Borrower whether under this Schedule or another schedule, whether under the Agreement or another loan or Loan agreement. Lender agrees to promptly terminate any such financing statements filed pursuant to the preceding sentence for equipment/goods which are not actually financed by Lender.

| | |
|---|---|
| Equipment Description: | One (1) 1999 Driltech Model T25K5W Drill, s/n: 732406 Mounted on One (1) 1999 Sterling Truck Model 9513 With 420' Drill Rod And Hammer, Vin: 2FZXEEDB6XAF21351 and any and all accessories, accessions, substitutions, replacement parts, replacements, attachments, proceeds and insurance proceeds. |
| Equipment Location: | 706 St. Paul Street, N. Smithfield, RI 02896 |
| Re-Approval Date: | March 3, 2004. |

FOR VALUE RECEIVED, Borrower promises to pay to the order of Lender, the principal sum of Two Hundred Forty-One Thousand Five Hundred Eleven Dollars and No Cents ($241,511.00), together with interest thereon at the Applicable Rate, as calculated from time to time in the manner provided below. Interest shall begin to accrue on the date upon which Lender advances funds in connection with this Schedule (the "Advancement Date"). Installments of principal and interest (each, a "Payment") shall be due in arrears commencing on the First Payment Due Date (as defined below). Payments shall be invoiced by Lender referencing the Applicable Rate (as defined below) and shall be payable for the Term set forth below (each month for which a Payment accrues being referred to as a "Payment Period"), and shall be payable on the same day of each month thereafter (each, a "Payment Date"). Each Payment Date relative to a Payment Period shall be the first calendar day of the immediately succeeding month. Notwithstanding anything contained herein to the contrary, Payments shall be due on each Payment Date regardless of whether or not Lender has invoiced Borrower therefor.

Borrower shall make forty-eight (48) consecutive, equal monthly payments (the "Term") of principal, each in the amount of Five Thousand Thirty-One Dollars and Forty-Eight Cents ($5,031.48) (with the final such payment being in an amount sufficient to repay the principal balance outstanding on the final Payment Date in full). Borrower shall also pay interest at the Applicable Rate on the principal amount of this Schedule outstanding from time to time, with such interest being determined as follows: (1) with respect to each Payment Period, the Applicable Rate shall be that rate of interest, determined on the first (1st) day of that Payment Period (or if the first day of that Payment Period is not a business day, the first business day in that Payment Period). The Applicable Rate shall be that rate of interest equal to the sum of: (a) the Adjusted LIBOR Rate, and (b) the Spread (as those terms are defined below). (2) In addition, to the extent that the First Payment Due Date does not fall on the first day of the month immediately succeeding the Advancement Date, and there exists a period of a partial month (the "Stub Interest Period") between the Advancement Date and the beginning of the first Payment Period, interest on the outstanding principal balance shall be calculated for that Stub Interest Period on a per diem basis at the Initial Interest Rate. Interest accrued in this manner shall be due and payable with the first monthly Payment on the First Payment Due Date.

As used in this Schedule, the following terms shall have the meanings shown:

EXHIBIT
tabbles
D

(a) "First Payment Due Date" means: (i) the first day of the month immediately succeeding the Advancement Date, if the Advancement Date falls on the first calendar day of a month, or (ii) the first day of the second month immediately succeeding the Advancement Date, if the Advancement Date falls on any day other than the first day of a month.

(b) "Benchmark Rate" means the LIBOR Rate for that day two business days prior to the Advancement Date.

(c) "Spread" means 3.3 % (330 basis points).

(d) "Initial Interest Rate" means the Benchmark Rate plus the Spread.

(e) "LIBOR Rate" means, with respect to a business day, the London interbank offered rate for deposits in United States dollars in an amount comparable to the then unpaid principal balance, having a maturity of three (3) months, which appears on the daily rate sheet received by Lender from its parent (or a substitute commercial bank of equal or greater net worth selected by Lender), on such business day. If LIBOR is no longer available, Lender will choose a new, comparable index and will give Borrower notice of such new index, which shall immediately go into effect for the calculation of interest on the principal balance outstanding on and after the date of such change.

(f) "Adjusted LIBOR Rate" means that rate of interest determined by the following: If, at the time of determination, the LIBOR Rate is greater than or less than the Benchmark Rate, then, for each one basis point (.01%) variance, the Adjusted LIBOR Rate for such Payment Period shall be the Benchmark Rate increased or decreased, as the case may be, by one basis point (.01%). If there is no such variance above or below the Benchmark Rate, the Adjusted LIBOR Rate for that Payment Period shall be equal to the Benchmark Rate. Each determination of the Adjusted LIBOR Rate propounded by Lender pursuant to this Schedule shall be conclusive and binding on all parties hereto absent manifest error.

All amounts coming due hereunder shall be paid in U.S. funds drawn on a U.S. financial institution. Interest shall be computed on the basis of a year equal to 360 days, and actual days elapsed (including the first day but excluding the last) occurring in the Payment Period for which payable.

TIME IS OF THE ESSENCE and if any payment is not made in full within ten (10) days of its due date, a late charge of five percent (5%) of the amount past due shall automatically become payable by Borrower, but in no event shall any late fee exceed an amount determined in strict accordance with any state of federal statute applicable hereto. Lender shall have no obligation to accept any payments hereunder not accompanied by all outstanding late payment fees. Borrower acknowledges that the late payment fee is not imposed as a charge for the use of money, but to permit Lender to offset its administrative expenses and other costs incurred in dealing with loans not paid on time. The late payment fee is in no way intended to be nor shall it be deemed to be an interest charge. In the event of a default under this Schedule or the Agreement, this Schedule shall become immediately due and payable.

NOTWITHSTANDING ANYTHING CONTAINED IN THE AGREEMENT TO THE CONTRARY, BORROWER'S VIOLATION OF OR FAILURE TO COMPLY WITH THE INSURANCE PROVISIONS OF SUBSECTIONS 4(f) AND 4(g) THEREOF SHALL CONSTITUTE AN IMMEDIATE EVENT OF DEFAULT THEREUNDER WITH NO CURE PERIOD EXCEPT AS LENDER MAY THEN AGREE TO IN WRITING.

The Agreement provides that in the event that Borrower fails or ceases to provide any of the required insurance coverage, Lender may obtain coverage for part or all of the term of this Schedule. The Agreement further provides that Borrower shall be fully responsible for the cost of any such insurance. Borrower agrees that, promptly upon demand by Lender, it shall reimburse Lender for the costs of any such insurance, plus an administrative fee (not to exceed the maximum allowed by law) of 10% of such costs. If Lender chooses not to procure insurance in this manner, LENDER MAY, IN ORDER TO COVER COSTS ASSOCIATED WITH BORROWER'S NONCOMPLIANCE, ASSESS AN ADMINISTRATIVE FEE OF $50 PER MONTH FOR EACH MONTH OR PART THEREOF DURING WHICH EVIDENCE OF THE INSURANCE REQUIRED BY THIS AGREEMENT IS NOT PROVIDED.

**To the extent permitted by applicable law, from and after the occurrence of an Event of Default under the Agreement and/or this Schedule, and/or after maturity (whether by acceleration or otherwise), interest on the outstanding principal balance shall be recalculated at a rate of interest equal to the lesser of: (i) eighteen percent (18%) per annum, or (ii) the maximum rate of interest allowed by applicable law.**

Notwithstanding anything contained herein or in the Agreement to the contrary, it is the intention of Lender and Borrower that Borrower be allowed to prepay the Loan evidenced by this Schedule. ANY SUCH PREPAYMENT SHALL BE ACCORDING TO THE FOLLOWING TERMS: The Loan may be prepaid, in whole only, prior to its stated maturity, by Borrower's tendering to Lender payment in good funds of an amount equal to the sum of: (i) all accrued but unpaid interest, late charges and other amounts payable or assessable under the Agreement or the Schedule, (ii) the outstanding principal balance of the Loan (the "Principal Balance"), and (iii) a prepayment premium equal to 3% of the remaining principal balance for year one of the term of the Loan, 2% of the remaining principal balance for year two of the term of the Loan. During years three through four of the term of the Loan, no prepayment premium will be assessed. (As used herein for the calculation of the prepayment premium, any partial year shall be counted as one full year for purposes hereof.)

Additional Repayment Terms:

Notwithstanding anything contained herein to the contrary, Borrower shall, so long as no event of default has occurred and is continuing hereunder or under the Agreement, have the option to fix the Applicable Rate for the remainder of the term. The terms and conditions that govern the exercise of this option are as follows: (i) Borrower may notify Lender in writing at any time during the term hereof of its intention to prospectively fix the Applicable Rate; (ii) this election may only be accomplished by Borrower's execution of Lender's form of Election to Fix Interest Rate (the "Election Form") in the form attached hereto; (iii) at the point in time during the Term when it seeks to fix the Applicable Rate, Borrower must complete, and a duly authorized person must execute, the Election Form and return it to Lender along with a fee in the amount of $500 (the "Fee"); (iv) if the Election Form and the Fee are received by Lender on any of the first fifteen (15) calendar days of a Payment Period which is a business day for Lender, Lender, using the formula which follows, shall calculate a fixed rate of interest (the "Fixed Rate") which shall become the Applicable Rate for the remainder of the Term; (v) if the Election Form and the Fee are received by Lender after the fifteenth day of a Payment Period, they shall be treated as if received at the beginning of the next Payment Period, and the Fixed Rate shall be calculated as of the first business day of the next Payment Period in the manner described herein (in any case, Borrower's election shall not be deemed to have occurred until both the Election Form and the Fee are received); (vi) the Fixed Rate shall be equal to the LIBOR Swap Rate Yield Curve calculated at the half-life of the remaining term of the Loan evidence hereby, as published in the Wall Street Journal on the date of calculation (the "Index"), plus three point thirty % (330 basis points); (vii) once the Fixed Rate has been calculated, it shall become effective with respect to the Payment Date succeeding the Payment Period during which it was calculated.

Lender and Borrower intend to conform to applicable usury laws and any interest or other amounts payable under this Schedule shall, if necessary, be subject to reduction to the highest amount not in excess of the maximum nonusurious amount allowed under such usury laws. It is the intention of both Borrower and Lender that this Schedule, having been negotiated (either telephonically or in person) with Lender at its executive offices in Connecticut, to be performed by Borrower's remittance of payment to Connecticut, and to have no effect until accepted by Lender at its Connecticut offices, shall be governed by and interpreted in accordance with the laws of the State of Connecticut.

Lender shall have the right to correct any patent errors in and to fill in any blanks left in this Schedule, in the Agreement or in any document executed in connection therewith. Any conflict between the terms of this Schedule and the Agreement shall be resolved in favor of this Schedule.

Borrower and any and all others liable for all or any part of the Obligation evidenced hereby, severally waive presentment for payment, demand, notice of nonpayment and demand, notice of default, notice of intent to accelerate, notice of acceleration, notice of protest, and notice of dishonor, and agree that the time of payment hereof may be extended and any collateral given as security may be reLoand, from time to time, one or more times, without notice of such thereof and without further consent.

In the event of commencement of suit to enforce payment or performance of this Schedule, Borrower shall pay Lender, in addition to the unpaid amounts due hereunder or under the Agreement, the expenditures incurred by Lender, including, without limitation, attorney(s)' fees and court costs.

**DEFAULT-RELATED NOTICES:** Lender and Borrower, as a material part of the consideration for this Loan, expressly agree that if one or more Events of Default occur under the Agreement, under this or any other Schedule (before or after this one), and Lender sends written notice to Borrower of the default or any related matter (including, notice of public or private sale of any of the Equipment), then the provisions of Section 15 of the Agreement as they relate to such notice(s) will be deemed automatically amended to omit the phrase "(absent a return of the item)". As a result, any such notice shall (if otherwise compliant with Section 15) be deemed given on the fifth day after being deposited in the United States mail, postage prepaid, and classified as certified mail, return receipt requested, regardless of whether the item is later returned.

The delivery of this Schedule or any other agreement in connection herewith does not, absent express wording to such effect, constitute an offer to lend money. The credit approval underlying this borrowing is not perpetual and is subject to expiry should the Equipment not be delivered to and accepted in writing by Borrower within seventy-five (75) days of the Approval Date shown above or if any event described in section 12 of the Agreement occurs. In any such event, Lender's obligations to Borrower in connection herewith may cease in accordance with section 12 of the Agreement. In addition, if all items of Equipment are not delivered, installed and accepted within thirty (30) days of the Approval Date set forth above, Lender shall have the right to adjust the interest rate upon which the installment payments shown above are based to reflect increased costs of funds.

This Schedule shall be governed by the laws of the State of Connecticut as more particularly set forth in Section 8 of the Agreement. This Schedule shall be binding upon Lender only when received, accepted and executed by Lender in the State of Connecticut.

Borrower hereby represents to Lender that it is a commercial, non-consumer borrower, that the Equipment will not be used for personal, family or household purposes and, further, ratifies and affirms all of the covenants and provisions of the Agreement.

**IN WITNESS WHEREOF,** this Schedule is executed this X 15 day of X March, 2004.

A & W ARTESIAN WELL CO. (BORROWER)
ADDRESS: 706 St. Paul Street, N. Smithfield, RI 02896

BY: X H. Allan Follett Pres.
H. Allan Follett
TITLE: President

ACCEPTED AT FARMINGTON, CONNECTICUT
CENTER CAPITAL CORPORATION (LENDER)
(NOT AN INDORSEMENT)

BY: [signature]

MEG LENGSON
(Name)

Vice President
(Title)

# DELIVERY AND ACCEPTANCE RECEIPT

RE: SECURITY AGREEMENT/MASTER LOAN AND SECURITY AGREEMENT NO. 21904, DATED APRIL 15, 1999 ("AGREEMENT"), AND SECURED INSTALLMENT PROMISSORY NOTE/LOAN SCHEDULE NO. 01, DATED APRIL 15, 1999 ("NOTE"), BETWEEN A & W ARTESIAN WELL CO. ("BORROWER") AND CENTER CAPITAL CORPORATION ("LENDER").

The undersigned Borrower hereby acknowledges receipt of the Equipment described herein or on any attached schedule ("Equipment") fully installed and in good working order and condition, and Borrower hereby unconditionally and irrevocably accepts the Equipment after full inspection thereof as satisfactory for all purposes. Borrower acknowledges that Lender has fully and satisfactorily performed all covenants and conditions to be performed by Lender and has delivered or caused to be delivered the Equipment selected solely by Borrower in accordance with Borrower's directions.

The Equipment was delivered to Borrower on 4-17-99 and Borrower has attached hereto a complete, legible copy of the bill of lading or other evidence of delivery.

BORROWER AGREES THAT THE LENDER HAS NOT MADE AND MAKES NO REPRESENTATIONS OR WARRANTIES OF ANY KIND OR NATURE, DIRECTLY OR INDIRECTLY, EXPRESSED OR IMPLIED, AS TO ANY MATTER WHATSOEVER INCLUDING THE SUITABILITY OF SUCH EQUIPMENT, ITS DURABILITY, ITS FITNESS FOR ANY PARTICULAR PURPOSE, ITS MERCHANTABILITY, ITS CONDITION, AND/OR ITS QUALITY. BORROWER AFFIRMS THAT IT HAS NO DEFENSES OR COUNTER-CLAIMS AGAINST LENDER.

Borrower represents and warrants that none of the Equipment was delivered prior to the date Borrower executed the Note and the Agreement unless Lender previously consented thereto in writing. Borrower understands that Lender is relying upon this receipt as a condition for its making payments to the seller, vendor or supplier of the Equipment and Borrower, by signing this receipt, does hereby expressly authorize Lender to make payment to the Equipment vendor(s) on such terms as Lender and such vendor(s) may agree.

DATE EQUIPMENT ACCEPTED: 4-17-99

BORROWER: A & W ARTESIAN WELL CO.

By: H. Allan Follett
H. Allan Follett

Title: President

**DO NOT SIGN THIS RECEIPT UNTIL YOU HAVE ACTUALLY RECEIVED, INSPECTED AND ACCEPTED THE EQUIPMENT.**